UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

SHERWIN CHERRY,                                          :
                                                         :
                              Plaintiff,                 :
                                                         :
              - against -                                :          **OPINION AND ORDER**
                                                         :           11-CV-3872 (ER)
BYRAM HILLS CENTRAL SCHOOL DISTRICT,                     :
                                                         :
                              Defendant.                 :

-----------------------------------------------------------------------x

Ramos, D.J.:

       Plaintiff Sherwin Cherry ("Plaintiff" or "Cherry"), appearing *pro se*, brings this action

against Byram Hills Central School District ("Defendant" or the "District") pursuant to Title VII

of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, alleging discrimination based on

his race, color and national origin, and retaliation as a result of the filing of various complaints

against both the District and a coworker.  Complaint ("Compl.") (Doc. 2.)  Pending before the

Court is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Doc. 25.)

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

**I.     Local Rule 56.1 and *Pro Se* Litigants**

       Under Rule 56.1 of the Local Civil Rules of the United States District Courts for the

Southern and Eastern Districts of New York ("Local Rule 56.1"), a party moving for summary

judgment pursuant to Fed. R. Civ. P. 56 must submit a "separate, short and concise statement, in

numbered paragraphs, of the material facts as to which the moving party contends there is no

genuine issue to be tried."  Local R. 56.1(a).  In answering a motion for summary judgment,

litigants in this District are required to specifically respond to the assertion of each purported

undisputed fact by the movant and, if controverting any such fact, to support its position by

citing to admissible evidence in the record.  Local Rule 56.1(b), (d); *see also* Fed. R. Civ. P.

56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  If the moving party seeks summary judgment against a *pro se* litigant, the movant is also required to notify the *pro se* litigant of the requirements of Fed. R. Civ. P. 56 and Local Rule 56.1, as well as provide the *pro se* litigant with full texts of both rules.  Local R. 56.2.  Once served with a statement pursuant to Local Rule 56.2, "[*p*]*ro se* litigants are then not excused from meeting the requirements of Local Rule 56.1."  *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (citing *Vt. Teddy Bear Co. v. 1-800-BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004)).  Each factual statement set forth in the moving party's Local Rule 56.1 statement "will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local R. 56.1(c); *see also T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."), *cert. denied*, 130 S. Ct. 3277 (2010).

In the instant case, Defendant submitted a Local Rule 56.1 Statement and provided Plaintiff with notice of his obligations, however, it did not attach to the notice the full text of Fed. R. Civ. P. 56 and Local Rule 56.1, as required by Local Rule 56.2.  (Docs. 26, 29.)  Plaintiff failed to submit an appropriate response to Defendant's motion and, instead, filed only a copy of the Complaint with several documents attached.  As the Second Circuit has made clear, however, "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)), and "where a *pro se* plaintiff fails to submit a proper [Local] Rule 56.1 statement in opposition to a summary judgment

2

motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali*, 678 F. Supp. 2d at 178 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)).  Moreover, courts are to read a *pro se* litigant's submissions "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Therefore, this Court has endeavored to discern from the record if there is any evidentiary support for the assertions contained in the Complaint and the documents attached thereto, and to determine if there are any other material issues of fact based on the evidence in the record. *Geldzahler v. N.Y. Med. Coll.*, 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y. 2010).  The Court has considered the present motion in light of the entirety of the record to afford Plaintiff the special solicitude to which he is entitled.  *Burke v. Royal Ins. Co.*, 39 F. Supp. 2d 251, 257 (E.D.N.Y. 1999).

## II.    Statement of Facts

The following facts are undisputed except where otherwise noted.

Plaintiff is of Native American race and national origin and is Black.  Def.'s 56.1 Stmt. ¶ 1.[1]  He was hired by the School District as a full-time "school monitor" effective September 5, 2006, and was initially assigned to work at the high school.  *Id.* ¶¶ 2-3.  At the time Plaintiff began working as a school monitor, his supervisor was Dr. William Donohue, the principal of the high school.  *Id.* ¶ 4.  In May 2008, Plaintiff made a complaint to Dr. Donohue about Ed Felix, a

---

[1] Citations to "Def.'s 56.1 Stmt." refer to Defendant's Local Civil Rule 56.1 Statement, Doc. 29.  The supporting evidence for all of Defendant's Rule 56.1 Statements cited herein have been reviewed and accepted by the Court.

fellow school monitor at the high school, who Plaintiff claimed was harassing him.  Ex. I.[2]  On

September 14, 2008, Plaintiff renewed that complaint, noting that since his initial complaint,

"Mr. Felix has subjected [him] to his ongoing retaliation."  Ex. J.

      In response to Plaintiff's May 2008 complaint, Dr. Donohue claims that he investigated

Plaintiff's allegations by meeting with Plaintiff on May 14, 2008 and with Mr. Felix on May 15,

2008.  Ex. D (Donohue Aff.) ¶¶ 8-9.  Following Dr. Donohue's investigation, he met with

Plaintiff to ask if he had any further problems with Mr. Felix, to which Plaintiff responded, "so

far, so good."  *Id.* ¶ 10.  Dr. Donohue again met with Plaintiff in June 2008, and Plaintiff stated

at that time that things were "OK" with Mr. Felix.  *Id.* ¶ 11; *see also* Exs. K at 10; L at 1.

Plaintiff, on the other hand, stated in his September 2008 complaint that his earlier complaint

"fell on dea[f] ears" and that the District continued to "allow[] such inappropriate behavior by

Mr. Ed Felix," as well as "cover-up his unprofessional behavior."  Ex. J.  Additionally, Plaintiff

testified at his deposition that the District "ignored [his complaint] to a certain degree" and

"swept [it] under the rug."  Ex. C (Cherry Depo. Tr.) at 34.

      After Plaintiff renewed his allegations against Mr. Felix in September 2008, his claims

were investigated by the District Human Rights Coordinator, Judith Hirschhorn, with the

assistance of the school's attorney, Jeffrey Kehl.  *See* Exs. K; L; M.  The investigation included

interviews of twelve witnesses, including Plaintiff and Mr. Felix.[3]  Ex. K.  On October 30, 2008,

Ms. Hirschorn and Mr. Kehl issued a memorandum summarizing their investigation to the

Superintendent of Schools, Jacquelyn Taylor, and thereafter, issued a supplemental

---

[2] Unless otherwise noted, all citations to "Ex." refer to the exhibits attached to the Declaration of Lewis R. Silverman.

[3] At his deposition, Plaintiff testified that he "do[es]n't recall" whether the District appointed investigators to investigate his allegations and that he "do[es]n't remember" whether he was ever interviewed with respect to his claims against Mr. Felix.  Ex. C (Cherry Depo. Tr.) at 35, 47.

memorandum, dated November 5, 2008.  *Id.*  Following the investigation of Plaintiff's

allegations, Dr. Taylor wrote to Plaintiff on November 12, 2008 to inform him that the

investigation concluded that he had not been the victim of harassment or retaliation, and that the

District responded appropriately to his initial May 2008 complaint.  Ex. L.  The following day,

Dr. Taylor met with Plaintiff to discuss the results of the investigation.  Ex. M.  On November

24, 2008, Dr. Taylor issued a letter to Plaintiff memorializing their November 13, 2008 meeting

and summarizing the contents of that meeting.[4]  *Id.*

On December 15, 2008, Plaintiff filed a Verified Complaint with the New York State

Division of Human Rights ("Division of Human Rights"), charging the District with

discrimination relating to employment because of race/color and also charging retaliation.  Ex.

O.  Plaintiff voluntarily withdrew his Division of Human Rights complaint on March 17, 2009.

*Id.*

During the 2008/09 school year, the District considered a reduction in force for all aides

identified as "school aides," including school monitors.  Ex. D (Donohue Aff.) ¶ 12.  In a

memorandum to Plaintiff dated February 3, 2009, Dr. Donohue informed him that there was a

possibility of a reduction in force and advised him of his reduction in force rank based upon his

seniority.  Ex. N.  Seniority of school aides is governed by a collective bargaining agreement

between the Civil Service Employees Association, Inc. Local 1,000 A.F.S.C.M.E. and the

District, valid from July 1, 2007 to June 30, 2011.  Ex. V; *see also* Ex. D (Donohue Aff.) ¶ 14.

Pursuant to the terms of Section 2 of the collective bargaining agreement, entitled "Seniority,"

the seniority of school aids is computed from the date of commencement of employment.  Ex. V.

If more than one aide was appointed at the same time, the "tie breaker" is based on the number of

---

[4] Plaintiff testified at his deposition that he "do[es]n't remember" receiving Dr. Taylor's November 24, 2008 letter
or meeting with Dr. Taylor to discuss his complaints.  Ex. C (Cherry Depo. Tr.) at 48.

unpaid leave days taken, or the date the employee returned his signed employment agreement. Ex. N.   During Plaintiff's employment with the District, he used 71.5 unpaid days, which lowered his seniority rank.  Ex. D (Donohue Aff.) ¶ 16.  As of February 3, 2009, Plaintiff's reduction in force rank was "3," meaning that two other aides had less seniority than him.  Ex. N. The District budget called for the elimination of two school monitor positions as part of the reduction in force for the 2009/10 school year, effective June 30, 2009.  Ex. D (Donohue Aff.) ¶ 19.  The two school monitors who were laid off based upon the reduction in force were two Caucasian men, Richard Ciccotelli and Thomas Muska.  Exs. D (Donohue Aff.) ¶ 20; G (Ciccotelli Aff.) ¶ 6; W (School Monitors Seniority List).

On June 4, 2009, Plaintiff was informed that as a result of the reduction in force, the District was anticipating transferring five classroom aides and one school monitor to different buildings the following year, that the transfers would be determined based on seniority, and that based on his seniority, Plaintiff was scheduled to be among those transferred.  Ex. P.  Thereafter, on June 24, 2009, Plaintiff was informed that in order to meet the District's staffing requirements, he was being transferred to the H.C. Crittenden Middle School (the "middle school") for the 2009/10 school year.  Ex. Q.  Mr. Ciccotelli had held the position of school monitor at the middle school from October 2, 2008 until he was laid off from the position effective June 30, 2009.  Ex. G (Ciccotelli Aff.) ¶¶ 3, 6.

According to Dr. Donohue, the job description for school monitors is the same for monitors at both the middle school and the high school, and that it is only the tasks assigned from the job description that change depending on the building.  Ex. S; *see also* Ex. D (Donohue Aff.) ¶ 24.  In response to a request by Plaintiff, on October 19, 2009, Dr. Donohue provided him with a copy of the Civil Service job description for school monitors, as well as the District's

description of the job, which was created by Dr. Donohue in the fall of 2009 and which did not previously exist.  Exs. R; S.  The Civil Service job description includes the following "examples of work":

- Guides students safely across streets and intersections; and

- Controls traffic while school buses are arriving and departing.

The District's job description includes the preceding examples, as well as the following:

- Assists in the process of safe boarding and de-boarding of school buses in all weather.

Ex. R.[5]

Mr. Ciccotelli and Kelly Krentsa, Plaintiff's predecessors, both performed the duty of going outside to wave traffic around the traffic circle during their tenure as school monitors at the middle school.  Exs. E (Powderly Aff.) ¶ 7; G (Ciccotelli Aff.) ¶ 5.

Plaintiff testified at his deposition that he believes he was transferred from the high school to the middle school due to "[r]etaliation and discrimination" for his "filing the previous report against the school district" with the Division of Human Rights, as well as the complaints he made with the District regarding Mr. Felix.  Ex. C (Cherry Depo. Tr.) at 33, 49-50.  He elaborated that his complaints against Mr. Felix were "swept under the rug" and that "[p]reviously no actions were taken, except for [his] being transferred."  *Id.* at 34-35.  Plaintiff further testified that after his transfer to the middle school, he was asked to "stand outside in severe . . . weather conditions . . . directing traffic" and that such task "was clearly out of the description of a school monitor."  *Id.* at 42.  Moreover, Plaintiff testified that he believes that his

---

[5] In response to Defendant's motion, Plaintiff filed several letters that he wrote to Dr. Donohue in March, April and May 2010 requesting a list of his job duties from September 2006 to June 2009.  In response to Plaintiff's repeated requests, Dr. Donohue wrote to Plaintiff on April 21, 2010 referring him to the job descriptions previously provided on October 19, 2009 and explaining that prior to the fall of 2009, the only job description that existed was the Civil Service description, and that Dr. Donohue created a District job description document after the District transferred monitors among buildings.  Ex. S.

transfer was based on discrimination because he is Native American and the majority of the student body and staff in the District are Caucasian.  *Id.* at 53.  Additionally, Plaintiff believes that his transfer was motivated by racial animus because he is "an educated Native American" and most of the people in his position were not educated.[6]  *Id.* at 55-56.  Finally, Plaintiff testified that he doubted the accuracy of the job descriptions provided to him by Dr. Donohue, that he believed they were "pulled . . . off the internet" and that he does not believe that controlling traffic was part of his duties because when he was given his job description verbally upon being hired in 2006, directing traffic was not mentioned.  *Id.* at 69-70.

During the 2009/10 school year, the District again evaluated a reduction in force for all "school aides," and the District budget for the 2010/11 school year eliminated an additional two school monitor positions.  Exs. D (Donohue Aff.) ¶¶ 32-33; T; U.  Plaintiff was the least senior school monitor during the 2009/10 school year, with actual service time of 2.54 years (i.e., service time less the 71.5 days of unpaid absences), and, accordingly, he and the second least senior school monitor, Stephanie Lopes, a Caucasian woman, were terminated effective September 1, 2010 as part of the reduction in force.  Exs. D (Donohue Aff.) ¶ 34; T; *see also* Exs. U; W.  Of the four school monitor positions eliminated during the two reductions in force, three of the affected employees were Caucasian and one (Plaintiff) was Native American.  Exs.

---

[6] Additionally, Plaintiff testified that "other co-workers of different ethnicities had also . . . experienc[ed] similar situations, [and] similar circumstances," such as age and race discrimination, and noted that he witnessed "[u]nfair treatment."  Ex. C (Cherry Depo. Tr.) at 58, 60-61.  In response to questions regarding the specifics of such alleged incidents, Plaintiff testified that he witnessed Mrs. Stahl, a principal, instruct certain individuals to do particular assignments that were not under their job description, however, he did not provide any specific factual information about the alleged incidents, such as what Mrs. Stahl said to whom or what tasks such individuals were instructed to complete.  *Id.* at 61-62.  Additionally, Plaintiff testified that certain Caucasian employees would not attend monitor meetings and that nothing was ever "said or done" to them.  *Id.* at 63-64.  In a September 25, 2012 letter to the Court, Plaintiff stated that Luis Hernandez and Judy also experienced "similar unjust treatment" and racism. Finally, Plaintiff testified that his application to attend a field trip to Sing Sing Prison was denied, but that Mr. Felix was permitted to go on the trip.  Ex. C (Cherry Depo. Tr.) at 64-65.  Plaintiff failed, both at his deposition and in his submissions to the Court, however, to provide *any* facts supporting the inference that the above-cited actions of the District and/or its employees were motivated by racial animus or any other improper motivation.

D (Donohue Aff.) ¶ 35; W.

Plaintiff contends that his termination was based on discrimination and retaliation because "at that point [he] had been harassed and experienced racism" and had gone "through a surgery due to performing a duty that wasn't part of [his] job." Ex. C (Cherry Depo. Tr.) at 72. He further testified that he believed his termination was based on discrimination because he "was the only Native American there" and because of the treatment he received prior to being laid off, such as "being spoken to in a derogatory manner by . . . the principal" and "being assigned to direct traffic out in severe weather." *Id.* at 73-74. Additionally, Plaintiff contends that although Kimberly Trudden, a Caucasian female school monitor, was hired on the same date as Plaintiff, he was terminated instead of her. *Id.* at 79-80. Finally, Plaintiff testified that while he was employed by the District, both Mr. Felix and Mr. Powderly made racially derogatory remarks to him, however, Plaintiff did not specify what those remarks were or in what context they were made. *Id.* at 81-83.

On October 19, 2009, Plaintiff filed a second Verified Complaint with the Division of Human Rights while still employed by the District. Ex. Z. On March 10, 2011, the Division of Human Rights issued a Determination and Order After Investigation (the "Order"), dismissing the Complaint upon a finding that there was "no probable cause to believe that the [District] has engaged in or is engaging in the unlawful discriminatory practice complained of." *Id.* The Order states that on June 1, 2010, the Board of Education passed a resolution eliminating certain positions within the District, which included Plaintiff's position. *Id.* Moreover, the Division of Human Rights' investigation revealed that of the four school monitor positions eliminated due to budget cuts, three (75%) were white and one (25%) was Black (i.e., Plaintiff). *Id.* The Division of Human Rights therefore concluded that the District's actions were "based on a legitimate

9

business decision and [were] not a pretext to discriminate because of [Plaintiff's] race/color

(Black) and/or opposed discrimination/retaliation."  *Id.*

    The United States Equal Employment Opportunity Commission ("EEOC") adopted the

findings of the Division of Human Rights and issued a Right to Sue Letter on May 11, 2011.  *See*

Compl. at 5.  Plaintiff commenced the instant action on May 23, 2011.

**III.**    **Summary Judgment Standard**

    **a.**  **General Summary Judgment Standard**

    Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the

evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno*

*v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint*

*Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might

affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary

judgment is first responsible for demonstrating the absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue

of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F.

Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v.*

*Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

    In deciding a motion for summary judgment, the Court must "'construe the facts in the

light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant.'"  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.

2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  However,

in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).   The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).   To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

### b.   Additional Summary Judgment Standards for Employment Discrimination Cases

Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); however, "'[s]ummary judgment is appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation.'" *Hongyan Lu v. Chase Inv. Servs. Corp.,* 412 F. App'x 413, 415 (2d Cir. 2011) (quoting *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000)).   Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'" *Feingold v. New York,* 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)).   Furthermore, "[e]ven in the discrimination context, [] a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137; *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  A "nonmoving

party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)).

"[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial.  There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).  "Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010) (citing *Budde v. H & K Distrib. Co.,* No. 99–9449, 216 F.3d 1071 (table), 2000 WL 900204, at *1 (2d Cir. June 29, 2000)).

## IV.    Defendant is Entitled to Summary Judgment on Plaintiff's Title VII Claim

Plaintiff alleges that Defendant violated Title VII because it discriminated against him on the basis of his race/national origin and color and because the District retaliated against him for filing a prior complaint of harassment against the school and for filing a report against his colleague, Mr. Felix.  Plaintiff alleges that the discrimination and retaliation resulted in his transfer from the high school to the middle school, his being required to perform duties allegedly outside his job description upon his transfer, and his termination.  Defendant argues that it is entitled to summary judgment on Plaintiff's claim because the evidence establishes that Plaintiff's transfer and subsequent termination were based on two reductions in force and that the outdoor job duties at the middle school were required responsibilities of the school monitor

12

position.  Def.'s Mem. L. 10.

### a.  Legal Standard for Title VII Claims

Plaintiff's Title VII discrimination and retaliation claims are properly analyzed under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (noting that retaliation claims under Title VII are evaluated under the *McDonnell Douglas* three-step burden-shifting analysis).  Under the *McDonnell Douglas* framework, a plaintiff alleging a Title VII violation must first demonstrate a *prima facie* case of discrimination or retaliation.  *McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Jute*, 420 F.3d at 173.  The Second Circuit has explained that a plaintiff's burden at this stage is minimal.  *Abdu-Brisson,* 239 F.3d at 467.  Nonetheless, in order to state a *prima facie* case of discrimination, "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive," *Bennett v. Watson Wyatt & Co.,* 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 55 (2d Cir. 2002), and cannot meet her burden through reliance on unsupported assertions.  *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995).  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Griffin v. Ambika Corp.,* 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000).  A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge, is also insufficient.  *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Civ. 9959 (WHP), 2008 WL 4308126, *3 (S.D.N.Y. Sept. 17, 2008) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003)), *aff'd*, 604 F.3d 712 (2d Cir. 2010).

If a plaintiff successfully presents a *prima facie* case, the defendant must then rebut the

presumption by offering legitimate and non-discriminatory/retaliatory reasons for the adverse employment action demonstrated in plaintiff's *prima facie* case. *Abdu-Brisson,* 239 F.3d at 468 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). The defendant's burden at this step in the analysis is also "light." *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir. 1998). "The employer need not *persuade* the court that it was motivated by the reason it provides; rather it must simply articulate an explanation that, if true, would connote lawful behavior." *Id.*

 "If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted," and "drops from the case." *Burdine*, 450 U.S. at 255, 255 n.10. Under the third step of the *McDonnell Douglas* framework, the burden then shifts back to the plaintiff to prove intentional discrimination by a preponderance of the evidence. *Abdu-Brisson*, 239 F.3d at 469. The Second Circuit has explained that "there are two distinct ways for a plaintiff to prevail—'either by proving that a discriminatory motive, more likely than not, motivated the defendants or by proving both that the reasons given by the defendants are not true and that discrimination is the real reason for the actions.'" *Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000) (citation omitted). It is important to note that "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine,* 450 U.S. at 253).

 **b. Discrimination and Retaliation Claims**

 To state a *prima facie* case of discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered

an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010) (citing *Holcomb*, 521 F.3d at 138).

Similarly, to establish a *prima facie* case of retaliation under Title VII, an employee must show that:  (1) she was engaged in a protected activity; (2) the defendant was aware of the protected activity; (3) she suffered a materially adverse action; and (4) there is a causal connection between her protected activity and the materially adverse action.  *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).  While a protected activity generally involves the filing of a lawsuit or a formal complaint of discrimination with an administrative agency, *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992), the Second Circuit has recognized that "protected activity" may also include "informal protests of discriminatory employment practices, including making complaints to management."  *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990).   Additionally, a plaintiff may establish the causal connection requirement either directly, by offering evidence of retaliatory animus, or indirectly, by demonstrating that the protected activity was followed in close proximity by the adverse treatment.  *Id.* at 209.  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (citation omitted); *see also Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.,* 252 F.3d 545, 554 n.5, 554-55 (2d Cir. 2001) (collecting cases); *Woods v. Enlarged City Sch. Dist. of Newburgh,* 473 F. Supp. 2d 498, 528-29 (S.D.N.Y. 2007) (same), *aff'd*, 288 F. App'x 757 (2d Cir. 2008).

15

### c.  Plaintiff's Allegations

#### i.  Plaintiff's Transfer and Additional Outdoor Duties

##### 1.  Discrimination Claim

Plaintiff alleges that his transfer from the high school to the middle school in June 2009 and subsequent assignment to direct traffic before and after school were based on discrimination and/or retaliation.  With respect to his discrimination claim, the sole basis offered for such claim by Plaintiff at his deposition is that he is an educated Native American, that the majority of the student body and staff in the District is Caucasian, and that most of the people in his position were not educated.  Such conclusory assertions devoid of any factual support are insufficient to raise an inference of discrimination, and Plaintiff has thus failed to state a *prima facie* claim of discrimination.[7]  Moreover, not only are Plaintiff's allegations of discrimination wholly conclusory, they are also belied by the undisputed facts of the case.  Although Plaintiff alleges that his transfer was discriminatory in light of the fact that he is Native American and the District is primarily Caucasian, the uncontested documents submitted by Defendant indicate that two Caucasian school monitors were terminated as part of the reduction in force for the 2009/10 school year, and that Plaintiff's transfer to the middle school was effectuated in order to meet the District's staffing requirements.  Indeed, the school monitor that Plaintiff replaced at the middle school, Mr. Ciccotelli, was terminated as part of the reduction in force and is Caucasian.  *See Coleman v. Suffolk Cnty. Water Auth.*, No. 99-9351, 225 F.3d 645 (table), 2000 WL 1031124, at *1 (2d Cir. July 26, 2000) (Summary Order) (holding that plaintiff failed to establish *prima facie*

---

[7] With respect to Plaintiff's claims relating to his transfer and subsequent assignment to direct traffic outside the school, the Court notes that Defendant contests that these actions constituted adverse employment actions.  Def.'s Mem. L. 12.  The Court need not analyze whether Plaintiff's transfer and additional job duties constitute adverse employment actions, however, because Plaintiff has failed to provide the Court with *any* facts from which the inference can be drawn that the actions complained of were the result of discrimination and/or retaliation.

case of discrimination where at least two similarly-situated non-African-American employees were subject to the same circumstances of employment as plaintiff).

Moreover, Plaintiff has failed to provide the Court with *any* support for his bald assertion that the task of directing traffic "was clearly out of the description of a school monitor." To the contrary, both the Civil Service and District job descriptions for the school monitor position include assisting with traffic and the boarding and de-boarding of school buses,[8] and Plaintiff's predecessors at the middle school both performed the duty of going outside to direct traffic during their tenure at the middle school. Accordingly, Plaintiff has failed to demonstrate that his transfer to the middle school and additional assignment of directing traffic outside occurred under circumstances giving rise to an inference of racial discrimination.

## 2. Retaliation Claim

Plaintiff claims that he was transferred to the middle school in retaliation for his December 15, 2008 Division of Human Rights Complaint against the District, as well as the May and September 2008 complaints he filed against Mr. Felix. Plaintiff has failed to support his retaliation claim with *any* specific facts from which the inference can be drawn that his transfer to the middle school was effectuated in retaliation for his filing of complaints against the District or Mr. Felix.

Moreover, even assuming *arguendo* that Plaintiff was able to satisfy the causal connection requirement based upon the temporal proximity between the filing of his complaints and his June 2009 transfer—a dubious proposition in light of the six month time lapse, *see McCormick v. Jackson*, No. 07 Civ. 7893 (JSR), 2008 WL 3891260, at *2 (S.D.N.Y. Aug. 21,

---

[8] Although Plaintiff claims that the job descriptions provided to him by Dr. Donohue were "pulled . . . off the internet," he failed to provide the Court with any evidence or factual basis to support his assertion that the proffered job descriptions were inauthentic or otherwise false.

2008) (noting that "the overwhelming majority of cases limit such time to less than six months, if not shorter")—summary judgment would still be appropriate, as Defendant has clearly established a legitimate, non-retaliatory reason for Plaintiff's transfer, and Plaintiff has failed to prove that the rationale advanced by Defendant is pretextual.  Defendant provided the Court with uncontested evidence that as a result of a reduction in force for the 2009/10 school year, two school monitor positions were eliminated, and that the individuals terminated had the least seniority pursuant to the Civil Service collective bargaining agreement.  As a result of this reduction in force and in order to meet the District's staffing needs, Plaintiff was transferred to the middle school as a result of his level of seniority.  Moreover, upon his transfer, Plaintiff was assigned to direct traffic outside the middle school not in retaliation for his earlier complaints, but rather, in compliance with the job descriptions for the school monitor position.  The record is devoid of any evidence, other than Plaintiff's own conclusory and bare assertions, suggesting that Defendant acted with an improper motive in transferring Plaintiff or that Plaintiff was treated any differently than other similarly-situated school monitors.

### ii.  Plaintiff's Termination

Plaintiff alleges that his termination was motivated by discrimination and/or retaliation because, at the time of his termination, he "had been harassed and experienced racism," because he "was the only Native American there," and because prior to his termination, he had been "spoken to in a derogatory manner" by the principal of the school and had been the subject of racially derogatory remarks by both Messrs. Felix and Powderly.  Additionally, Plaintiff asserts that Kimberly Trudden, a Caucasian female school monitor, was hired on the same date as Plaintiff, but that Plaintiff was terminated ahead of her.

Plaintiff has failed to offer any "hard evidence" demonstrating that he was terminated by

18

the District for an improper reason.  Although Plaintiff asserts that he had been spoken to in a

"derogatory manner" and had been the target of racially derogatory remarks while employed by

the District, he fails to substantiate those allegations with any evidence or specific facts from

which the reasonable inference can be drawn that Plaintiff's termination was the result of racial

animus.  Moreover, even assuming Plaintiff established a *prima facie* case of discrimination or

retaliation, the District has clearly demonstrated a legitimate, non-discriminatory reason for

Plaintiff's termination.  Specifically, Defendant submitted evidence, which Plaintiff did not

refute, that the District budget for the 2010/11 school year eliminated an additional two school

monitor positions.  Accordingly, Plaintiff, the least senior school monitor, and Ms. Lopes, a

Caucasian woman and the second least senior school monitor, were both terminated effective

September 1, 2010.  Moreover, the District submitted evidence that of the four school monitor

positions eliminated during the 2009 and 2010 reductions in force, three of the affected

employees were Caucasian and one (Plaintiff) was Native American.  Finally, with respect to

Plaintiff's claim that he should not have been terminated ahead of Ms. Trudden, the evidence

submitted by Defendant clearly demonstrates that, contrary to Plaintiff's unsupported contention,

he was lower in seniority than Ms. Trudden, who was transferred between schools as part of the

reduction in force, as of the time of his termination.  *See* Ex. W.

   Because Plaintiff has offered only conclusory and unsupported allegations in support of

his discrimination claim and has failed to come forward with *any* evidence to suggest that his

termination was motivated by racial animus or retaliatory motives, summary judgment in favor

of Defendant is warranted.[9]

---

[9] In a September 25, 2012 letter to the Court, Plaintiff suggests that the District neglected his complaint against Mr. Felix due to "racism" and his "Native American status."  However, because the District's alleged failure to investigate Plaintiff's complaints against his co-worker is not an "adverse employment action" under Title VII,

## V.    Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is

GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion and close

this case.[10]  (Doc. 25.)

It is SO ORDERED.

Dated:    June 14, 2013
          White Plains, New York

                                                    Edgardo Ramos, U.S.D.J.

---

Plaintiff has failed to state a Title VII claim on that ground. *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) ("A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment.") (citations omitted).

[10] The Court remains cognizant that *pro se* litigants should be given leave to amend a complaint if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citing *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  However, in light of the fact that the District has articulated legitimate, non-discriminatory reasons for the actions about which Plaintiff complains (i.e., his transfer to the middle school, his additional outdoor assignment, and his termination), the Court finds that there is no "reason to believe that [Plaintiff] may be able to articulate a viable set of allegations" to support his Title VII claim and that his claim, "however pled, [is] fatally flawed." *Santos v. Gen. Elec. Co.*, No. 10 Civ. 6948 (JSR) (MHD), 2011 WL 5563544, at *12 (S.D.N.Y. Sept. 28, 2011) (Report & Recommendation), *adopted* 2011 WL 5563536 (S.D.N.Y. Nov. 15, 2011).